IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| PAMPA BAY LANDSCAPE CONSTRUCTION LLC, ) ) ) Plaintiff, ) ) vs. ) ) W.M. JORDAN COMPANY, INC., ) ) Defendant. ) ) | No. 2:25-cv-10181-DCN **ORDER** |

This matter is before the court on defendant W.M. Jordan Company, Inc.'s ("W.M. Jordan") motion to stay and compel arbitration, ECF No. 7. For the reasons set forth below, the court grants W.M. Jordan's motion to stay and compel arbitration.

## I. BACKGROUND

This action arises from a contract dispute concerning payment for landscaping services. ECF No. 1-1, Compl ¶¶ 3, 5. Plaintiff Pampa Bay Landscape Construction LLC ("Pampa Bay") is a South Carolina limited liability company engaged in commercial landscaping. Id. ¶ 1. W.M. Jordan is a general contractor incorporated in Virginia. Id. ¶ 2.

In May 2023, Pampa Bay entered into a subcontract (the "Subcontract") with W.M. Jordan. Id. ¶ 6. Per the Subcontract, Pampa Bay agreed to provide landscaping labor and materials at the Nowell Creek development (the "Project") located at 2000 Daniel Island Drive, Charleston, South Carolina 29492 (the "The Subject Property"). Id. ¶ 6. The Subcontract totaled $486,746.35. Id. ¶ 7.

On April 18, 2025, W.M. Jordan forwarded an email to Pampa Bay from the owner of the Subject Property stating that Pampa Bay's services were to be terminated and replaced. Id. ¶ 9. On the same day, W.M. Jordan gave Pampa Bay a deadline of April 22, 2025 to finish its existing work under the Subcontract. Id. ¶ 12  Pampa Bay notified the owner of the Subject Property and

1

W.M. Jordan that it was not possible to complete the Subcontract in four days, but that it intended to work through the deadline. Id. ¶ 13.

Prior to the notification of termination, Pampa Bay had submitted a pay application to W.M. Jordan for $30,921.05. Id. ¶ 14. W.M. Jordan approved the payment to Pampa Bay on or about April 7, 2025. Id. ¶ 15. However, W.M. Jordan did not make the payment following the termination email. Id. ¶ 16. Pampa Bay submitted a subsequent, revised pay application to W.M. Jordan for $41,068.92 on April 18, 2025, reflecting its labor and materials through the date of submission. Id. ¶ 14. Again, W.M. Jordan then approved the payment on April 21, 2025, but again did not provide the payment to Pampa Bay. Id. ¶¶ 18–19. Though Pampa Bay continued to perform its obligations under the Subcontract until the April 22, 2025 deadline, it did not receive payment for labor or materials provided after *April* 18, 2025. Id. ¶¶ 20, 24. To date, Pampa Bay has not received the outstanding balance of $125,310.25 remaining on the Subcontract. Id. ¶ 31.

Pampa Bay originally filed this case in Berkeley County Court of Common Pleas on July 2, 2025. ECF No. 1-1, Compl. It asserts cause of action for (1) foreclosure of a mechanic's lien, (2) breach of contract, (3) unjust enrichment, (4) violation of the South Carolina Prompt Pay Act, S.C. Code Ann. § 29-6-50, and (5) violation of S.C. Code Ann. § 27-1-15. Id. ¶¶ 38–74. W.M. Jordan removed the case to this court on August 8, 2025. ECF No. 1.

On August 15, 2025, W.M. Jordan filed a motion to stay and compel arbitration. ECF No. 7. Pampa Bay responded in opposition on August 28, 2025. ECF No. 8. The court held a hearing on the motion on October 15, 2025. ECF No. 11. As such, the motion is fully briefed and now ripe for the court's review.

## II.  STANDARD

Courts recognize that the Federal Arbitration Act ("FAA") creates a strong presumption in favor of arbitration. See 9 U.S.C. §§ 1–14. As the Supreme Court has explained, "[t]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to

arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985). Arbitration "is a matter of consent, not coercion." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002); see also Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997) ("Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate."). Thus, arbitration "is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010) (internal quotation marks and citations omitted).

> The Fourth Circuit has stated that
>
> Application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 84 (4th Cir. 2016) (internal quotation marks omitted) (quoting Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 696 n.6 (4th Cir. 2012)). Although courts must compel arbitration when a party satisfies these four factors, the standard of review and procedural mechanisms to be applied in resolving these four factors are less clear. Gibbs v. Stinson, 421 F. Supp. 3d 267, 299 (E.D. Va. 2019), aff'd sub nom. Gibbs v. Sequoia Cap. Operations, LLC, 966 F.3d 286 (4th Cir. 2020). "Recently, a number of district courts in the Fourth Circuit have determined the burden of proof is 'akin to the burden on summary judgment' because motions to compel arbitration often courts to consider require evidence outside of the pleadings."[1] Gibbs, 421 F. Supp. 3d at 299 (quoting Novic v. Midland

---

[1] Alternatively, courts evaluate a motion to compel arbitration under the standards espoused by § 4 of the FAA, which states in relevant part, that the district court will compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Under this standard, there must be "a judicial conclusion" that there is a validly formed, express agreement to arbitrate. Granite Rock, 561 U.S. at 303. As another court has noted, "[i]t is unclear what daylight exists, if any, between the two approaches. Both require the party seeking arbitration to offer evidence to satisfy the court that an arbitration agreement actually

Funding, LLC, 271 F. Supp. 3d 778, 782 (D. Md. 2017), rev'd on other grounds sub nom. Novic v. Credit One Bank, Nat'l Ass'n, 757 F. App'x 263 (4th Cir. 2019)); see also Galloway, 819 F.3d at 85 n.3.  As such, the party seeking to arbitrate bears the burden to show the existence of the agreement.  In re Mercury Constr. Corp., 656 F.2d 933, 939 (4th Cir. 1981) (en banc), aff'd sub nom, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983).  Whether an arbitration agreement has been formed is an issue of state contract law.  Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., 913 F.3d 409, 415 (4th Cir. 2019).

### III.   DISCUSSION

W.M. Jordan moves to stay and compel arbitration, arguing that the Subcontract mandates arbitration under the FAA.  ECF No. 7-1 at 5–12.  Pampa Bay contends that disputes regarding the Subcontract are governed by and violate the South Carolina Uniform Arbitration Act ("SCUAA"), S.C. Code Ann. § 15-48-10 et seq.  ECF No. 8 at 8–14.  Alternatively, Pampa Bay argues that, should the court find that the FAA applies, any provision in the Subcontract that contemplates arbitration is unconscionable and therefore unenforceable.  Id. at 5–8.

The Subcontract contains the following provision concerning arbitration of the claims and disputes of Pampa Bay and W.M. Jordan:

> (A) With respect to any dispute between the Subcontractor and W.M. Jordan Company for which the Owner is or may be liable, in whole or in part, the Subcontractor will prepare its claim and will present it to W.M. Jordan Company for submission to the Owner within a time sufficient for W.M. Jordan Company to submit it to the Owner as required by the General Contract.  W.M. Jordan Company will cooperate with the Subcontractor in presenting such claim to the Owner and will pay to Subcontractor (subject to any applicable set-off) any amounts recovered for Subcontractor on such claim.  The Subcontractor agrees that it will bear all costs, including legal fees, necessary to pursue such a claim against the Owner, and that this remedy shall be the Subcontractor's sole and exclusive remedy in lieu of any claim directly against W.M. Jordan Company or

---

exists, and both allow the non-moving party to rebut that evidence."  Gibbs, 421 F. Supp. 3d at 299 n.51.  The court opts to follow the logic of other courts within this district that have considered motions to compel arbitration under the burden of proof that is akin to a motion for summary judgment.

its bonding company regardless of the outcome of the claim. Any claims by the Subcontractor not made within ONE (1) YEAR from the date when the cause of action occurred, or such lesser time if required by the General Contract, shall be waived.

. . .

(C) At the sole discretion of W.M. Jordan Company, claims included in subparagraphs (A) or (B), above, may be arbitrated or decided by some other means of alternative dispute resolution. If W. M. Jordan Company determines that resolution of any dispute between the Subcontractor and W. M. Jordan Company shall be made in such manner, litigation pursuant to subparagraph (B), above, shall not be permitted. Further, Subcontractor agrees to participate in any arbitration or other form of alternative dispute resolution between W. M. Jordan Company and the Owner that in any way arises out of or relates to the Subcontract Work. If arbitration is the forum chosen by W. M. Jordan Company in its sole discretion, it shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties agree otherwise. Venue for any hearings resulting from W. M. Jordan Company's choice of alternative dispute resolution shall be Wilmington, North Carolina.

ECF No. 7-2 at 8 (the "Arbitration Clause"). The court first turns to whether the Arbitration Clause is governed by the FAA and then to the issue of enforceability.

### A. The FAA Governs the Arbitration Clause

In their briefs and at the motion hearing, the parties mainly dispute the third element of the Fourth Circuit's FAA analysis: whether the transaction in the Subcontract relates to interstate or foreign commerce. ECF Nos. 7-1 at 5–8, 8 at 9–3, 11. For thoroughness, the court takes all four elements of the FAA in turn.

#### 1. Dispute Between the Parties

First, both parties dispute whether Pampa Bay is entitled to payment of $125,310.25 for landscaping labor and materials it provided under the Subcontract. See Compl. Pampa Bay has asserted causes of action for (1) foreclosure of a mechanic's lien, (2) breach of contract, (3) unjust enrichment, (4) violation of the South Carolina Prompt Pay Act, S.C. Code Ann. § 29-6-50, and (5) violation of violation of S.C. Code Ann. § 27-1-15. Id. ¶¶ 38–74. W.M. Jordan states in its answer and counterclaim that Pampa Bay breached the Subcontract by abandoning its obligations

and performing deficient work. ECF No. 6 at 8–12. Thus, the court finds that the first element of the FAA is met because there is a dispute between the parties. See Galloway, 819 F.3d at 84.

## 2. Written Agreement Containing an Arbitration Provision

Second, neither party disputes that the Subcontract is a written agreement nor alleges any defect in its formation. See ECF Nos. 7-1, 8. The parties agree that the Arbitration Clause as contained in the Subcontract contemplates arbitration of any dispute or claim by Pampa Bay against W.M. Jordan. See ECF Nos. Nos. 7-1, 8.

When read together, the Arbitration Clause states, "With respect to any dispute between the Subcontractor and W.M. Jordan Company for which the Owner is or may be liable," those claims "may be arbitrated or decided by some other means of alternative dispute resolution" at the discretion W.M. Jordan. ECF No. 7-2 at 8. In this action, Pampa Bay disputes W.M. Jordan's failure to provide payment for its landscaping labor and materials under the Subcontract, stemming from its termination by the owner of the Subject Property. See Compl. Consequently, the court finds that the second element of the FAA is met because Pampa Bay's claims against W.M. Jordan falls within in the Arbitration Clause of the Subcontract. See Galloway, 819 F.3d at 84.

## 3. Relationship of Transaction to Interstate Commerce

Third, the court must determine whether the transaction in the Subcontract relates to interstate or foreign commerce. See Galloway, 819 F.3d at 84. For an arbitration provision to be subject to the FAA, it must involve commerce. 9 U.S.C. § 2. In the FAA, "commerce" is defined as "commerce among the several States or with foreign nations. . . ." 9 U.S.C. § 1. "The FAA has an expansive reach," extending to the bounds of Congress's commerce clause power "such that an arbitration clause merely 'affecting' interstate commerce would be covered by the statute." THI of S.C. at Columbia v. Wiggins, 2011 WL 4089435, at *1 n.3 (D.S.C. Sept. 13, 2011) (citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273–74 (1995)). To

determine whether a transaction involves commerce within the meaning of the FAA, the court must "examine the agreement, the complaint, and the surrounding facts." Griffith v. HomeTeam Pest Def., Inc., 2022 WL 18495837, at *2 (D.S.C. Feb. 11, 2022) (quoting Zabinski v. Bright Acres Assocs., 553 S.E.2d 110, 117 (S.C. 2001)).

In the Subcontract, Pampa Bay agreed to provide landscaping labor and materials for the Project at the Subject Property in exchange for payment by W.M. Jordan. Compl. ¶ 6; ECF No. 7-2 at 2–12. The transaction is "among the several States" because W.M. Jordan is a Virginia entity, Pampa Bay is a South Carolina entity, and the owner of the Subject Property is based in Georgia. See Compl. ¶¶ 1–2; Allied-Bruce, 513 U.S. at 281 (finding "multistate nature" of parties to a contract sufficient to establish transaction involving interstate). Pampa Bay concedes that it sourced and installed plants at the Project in South Carolina from a supplier located in Florida to complete the Subcontract. See ECF No. 8 at 8–9; Zabinski, 553 S.E.2d at 117 (stating that a "transaction involved interstate commerce as contemplated by the FAA because the partnership utilized out-of-state materials, contractors, and investors."). Therefore, The court finds that the third element of the FAA is met because the Subcontract involves interstate commerce as contemplated by the FAA. See Galloway, 819 F.3d at 84.

### 4. Refusal of Pampa Bay to Arbitrate the Dispute

The court finds that the fourth element of the FAA is met by virtue of the pending matter. Pampa Bay not only contests whether the FAA applies to the Subcontract, but also whether the Arbitration Clause is enforceable. See ECF No. 8. Because W.M. Jordan has met its burden to establish each of the four elements required for application of the FAA to the Arbitration Clause of the Subcontract, the court finds that Arbitration Clause requires arbitration to be compelled in this matter. See Galloway, 819 F.3d at 84. The court turns to whether the Arbitration Clause is unenforceable.

### B. Enforceability of the Arbitration Clause

Pampa Bay argues that the Arbitration Clause is unenforceable because it is unconscionable. ECF No. 8 at 3–8. It asserts that it was not presented with an opportunity to negotiate the terms of the Subconstruct and that the terms of the Subcontract are "incredulously one-sided." ECF No. 8 at 6. Further, Pampa Bay contends that it lacked equal bargaining power to that of W.M. Jordan. Id.

To succeed on a claim of unconscionability, a litigant must prove that the challenged contract is "one which no reasonable person would enter into, and the inequality must be so gross as to shock the conscience." Sydnor v. Conseco Fin. Serv. Corp., 252 F.3d 302, 305 (4th Cir. 2001) (citation omitted). "In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them, and no fair and honest person would accept them." Smith v. D.R. Horton, Inc., 790 S.E.2d 1, 4 (S.C. 2016) (quoting Simpson v. MSA of Myrtle Beach, Inc., 644 S.E.2d 663, 668 (S.C. 2007)). "In applying South Carolina's unconscionability principles, the Fourth Circuit has recognized that a court should consider the circumstances of the case, and principles of equity, oppression, and unfair surprise to conclude whether 'the clauses involved are so one-sided as to be unconscionable' at the time the contract was formed." Hooters of Am., Inc. v. Phillips, 39 F. Supp. 2d 582, 613 (D.S.C. 1998) (quoting Coker Int'l, Inc. v. Burlington Indus., Inc., 935 F.2d 267, 1991 WL 97487, at *4 (4th Cir. 1991) (per curiam)). "[C]ourts may only consider the provisions of the arbitration agreement itself, and not those of the whole contract." Smith, 790 S.E.2d at 4. Six factors are relevant to the court's unconscionability inquiry:

> (1) the nature of the injuries suffered by the party sought to be held to the contract; (2) whether that party is a substantial business concern; (3) disparity in the parties' bargaining power; (4) the parties' relative sophistication; (5) whether there is an element of surprise in the contract's terms; and (6) the conspicuousness of the terms.

Id. at 614 (citation omitted).  "Inequality of bargaining power alone will not invalidate an arbitration agreement." Munoz v. Green Tree Fin. Corp., 542 S.E.2d 360, 365 n.5 (S.C. 2001) (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991)).  Further, "the mere fact that one party to a contract is larger than the other cannot be the basis of a finding of unconscionability of an arbitration clause in a contract." Phillips, 39 F. Supp. 2d at 613 (citation omitted).

The court finds that Pampa Bay has not established that the Arbitration Clause is unconscionable.  Pampa Bay's injuries are for nonpayment of $125,310.25 for landscaping labor and materials it provided under the Subcontract, see Compl, and no term in the Arbitration Clause prohibits Pampa Bay from seeking recovery, see ECF No. 7-2 at 8.  The court is without evidence that Pampa Bay lacked a meaningful choice or bargaining power as to the terms of the Arbitration Clause.  See Smith, 790 S.E.2d at 4; Munoz, 542 S.E.2d at 365 n.5.  The Arbitration Clause is binding on both Pampa Bay and W.M. Jordan, and thus it is not one-sided.  See Phillips, 39 F. Supp. 2d 582, 613.  Finally, the Arbitration Clause is conspicuously located in a section of the Subcontract titled "CLAIMS AND DISPUTES".  ECF No. 7-2 at 8.

Because Pampa Bay has failed to show that Arbitration Clause is unconscionable, the court finds that the Arbitration Clause of the Subcontract is enforceable.  See Sydnor, 252 F.3d at 305.  As such, the court orders Pampa Bay's claims against W.M. Jordan to arbitration.

### IV.   CONCLUSION

For the foregoing reasons, the courts **GRANTS** W.M. Jordan's motion to stay and compel arbitration.

**AND IT IS SO ORDERED.**

                                      **DAVID C. NORTON**
                                      **UNITED STATES DISTRICT JUDGE**

**January 8, 2026**
**Charleston, South Carolina**